# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA,**

    **Plaintiff-Respondent,**

vs.          No.     CIV 02-0285 MV/LCS
                                         CR 98-513 MV

**TERRANCE DEWAYNE HECKARD,**

    **Defendant-Movant.**

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION

**THIS MATTER** came before the Court on Movant's (Heckard's) Motion to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255. Heckard, currently incarcerated and proceeding *pro se*, attacks the Judgment and Sentence entered on May 7, 1999, in the case styled *United States of America v. Terrance Dewayne Heckard*, and numbered CR 98-0285 MV, United States District Court for the District of New Mexico. The United States Magistrate Judge, having considered the arguments of counsel, record, relevant law, and being otherwise fully informed, finds that the Motion is not well-taken in part and recommends that it be **DENIED IN PART**. Counsel shall be appointed and an evidentiary hearing shall be set with respect to specified aspects of Heckard's ineffective assistance of counsel claim.

### PROPOSED FINDINGS

1.     On July 22, 1998, Heckard was charged by criminal indictment with conspiracy to possess with intent to distribute 500 grams or more of cocaine in violation of 21 U.S.C. § 846,

possession with intent to distribute 500 grams or more of cocaine in violation of 21 U.S.C. § 841(a)(2) and (b)(1)(B) and 18 U.S.C. §2, and being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1), 924 (a)(2) and 2. (Doc. 1.)

2. On July 28, 1998, Jane Greek, Assistant Federal Public Defender, represented Heckard at his first appearance. (Doc. 2.) The next day, Robert McDowell, Assistant Federal Public Defender was appointed to represent Heckard. (Doc. 3.) On July 30, 1998, John B. Leyba, an attorney on the Criminal Justice Act (CJA) Panel, replaced Mr. McDowell. (Doc. 7.) On August 6, 1998, Mr. Leyba moved to withdraw and his motion was granted the same day. (Doc. 8.) On August 12, 1998, Angela Arellanes, a CJA panel attorney, was appointed to represent Heckard. (Doc. 11.) Ms. Arellanes represented Heckard through sentencing, and filed a notice of appeal on his behalf. (Doc. 105.) Todd Hotchkiss represented Heckard on his direct appeal. (Doc. 125.)

3. On November 9 and 16, 1998, the Government filed a Motion Admit Co-conspirator Statements and a Motion for Discovery. (Docs. 21 and 23.) Ms. Arellanes filed written responses to these Motions. (Docs. 40 and 41.) On November 18, 1998, Ms. Arellanes filed five discovery motions on Heckard's behalf, (Docs 26-30), and on November 25, 1998, she filed a Motion for Grand Jury Transcripts and a Motion to Sever Count III. (Docs. 37 and 39.) On December 1, 1998, the Honorable James A. Parker, Chief United States District Judge, granted Defendant's Motion to Disclose Grand Jury Transcripts. (Doc. 47.) On December 3, 1998, Chief Judge Parker denied, or declared moot, the Motion to Sever and the discovery motions. (Doc. 49.) On December 18, 1998, after hearing, Judge Parker granted the Government's Motion to Admit Co-conspirator Statements. (Doc. 53.)

4. On January 12, 1999, Heckard filed a Motion to Substitute Attorney. (Doc. 75.)

After a hearing where Heckard was permitted to voice his concerns, Heckard agreed to have Ms. Arellanes continue to represent him at trial, with the understanding that she would file a Motion to Dismiss the Indictment based on prosecutorial misconduct by January 19, 1999. (Doc. 59.) On January 15, 1999, Ms. Arellanes filed a Motion to Dismiss the Indictment and a Motion to Suppress Testimony of Mark Sanders and Anthony Flores as Violative of 18 U.S.C. § 201(c)(2). (Docs. 60 and 66.) On January 19, 1999, Ms. Arellanes filed a Motion in Limine to Exclude Prior Bad Acts. (Doc. 70) On January 21, 1999, Chief Judge Parker denied all three Motions. (Docs. 74, 75 and 79.)

     5.     The case came on for jury trial on January 25, 1999. (Doc. 82.) New Mexico State Police Officer Darcy White testified that she was working undercover on August 6, 1997 in Hobbs, New Mexico with a confidential informant, identified by Heckard as Misty Marsh. (Transcript of January 25, 1999 at 20-27.) Marsh introduced Heckard to Officer White as "Remus." (Transcript of January 25, 1999 at 20-27.) The initial introduction occurred in front of a house on Dunn Street. (Transcript of January 25, 1999 at 27-30.) Eric Sanders was also present. (*Id*.) Officer White asked Heckard if he had any crack cocaine, Heckard replied he only had powder cocaine, and the group explored the possibility of a purchase. (Transcript of January 25, 1999 at 29.) As they were discussing the sale, a police car passed by and the four agreed to reconvene in about fifteen minutes at nearby Washington Park. (Tr. at 30.)

     6.     Officer White and Marsh drove to the park and waited in their vehicle until Heckard arrived driving a pick-up with Eric Sanders in the passenger seat. (Transcript of January 25, 1999 at 31.) Officer White walked over to the driver's side of the truck, and Marsh walked over to the passenger side. (Transcript of January 25, 1999 at 32.) A discussion ensued over the quantity of cocaine to be purchased. (Transcript of January 25, 1999 at 33.) Eric Sanders was holding a baggie

of cocaine which he passed over to Heckard. (*Id.*) Heckard told Officer White he would sell her the cocaine, but first he wanted to see her use it. (Transcript of January 25, 1999 at 33.) Officer White refused, and Heckard asked for a container to dispense the cocaine. (Transcript of January 25, 1999 at 34.)

7. Officer White and Marsh went back to their vehicle and found a plastic wrapper from a cigarette pack. (*Id.*) Upon returning to the truck, Officer White handed the empty wrapper to Heckard, and gave $50 to Marsh. (*Id.*) Eric Sanders got out of the truck, Marsh got in and scooted over next to Heckard. (Transcript of January 25, 1999 at 35.) After a few minutes, Marsh got out of the truck with something in her mouth and she and Officer White returned to the undercover vehicle. (*Id.*) Once in the car, Marsh removed the cigarette wrapper from her mouth. (Transcript of January 25, 1999 at 36.) The wrapper contained a quantity of cocaine. (*Id.*)

8. Anthony Flores testified that on September 29, 1997, Flores transported a kilogram of cocaine from Odessa, Texas to Hobbs, New Mexico for Mark Sanders (Eric Sanders' brother) and another co-conspirator named Andrew Pompey. (Transcript of January 26, 1999 at 197; 203-204). Upon arriving in Hobbs, Flores was unable to reach Pompey or Mark Sanders. (Transcript of January 26, 1999 at 205-207.) Nervous about holding such a large quantity of cocaine, Flores stopped at Heckard's house on Dunn Street and asked Heckard to help him find Mark Sanders. (Transcript of January 26, 1999 at 207.) Heckard and another man were at the house. (Transcript of January 26, 1999 at 208.) Heckard did not know where Sanders was, but agreed to store the cocaine at his house until Sanders could be located. (Transcript of January 26, 1999 at 210-121.) Flores gave Heckard the bag of cocaine and Heckard disappeared with to the back of his house, returning empty-handed. (Transcript of January 26, 1999 at 212-213.) Flores, Heckard, and the other man then left to look

4

for Sanders and Pompey. (Transcript of January 26, 1999 at 213.)

9. About fifteen minutes later, Flores was able to reach Pompey by phone and informed him that the cocaine was at Heckard's house. (Transcript of January 26, 1999 at 213-214.) Pompey became enraged and ordered Flores to go back and pick up the cocaine. (Transcript of January 26, 1999 at 214-215.) As Flores arrived back at Heckard's house, Pompey was also driving up. (*Id*.) Mark Sanders was there and had already retrieved the cocaine. (*Id*.)

10. Mark Sanders testified that in September of 1997, Heckard came to Sanders' house and told him that Flores had just dropped off a kilo of cocaine at Heckard's house. (Transcript of January 26, 1999 at 157.) Sanders accompanied Heckard back to his house to pick up the cocaine, and that Sanders later sold the cocaine. (*Id*.) Sanders further testified that he sold cocaine to Heckard on four or five occasions during the period of the charged conspiracy. (Transcript of January 26, 1999 at 159-161; 167.) Sanders testified that he gave Heckard a .357 pistol and an electronic scale to weigh the cocaine. (Transcript of January 26, 1999 at 166-167.)

11. The Government also introduced taped recordings of conversations corroborating Flores' testimony about dropping off the kilogram of cocaine at Heckard's house. (Transcript of January 26, 1999 at 281-282.) Both Mark Sanders and Flores identified the voices on the tapes and verified their accuracy. *United States v. Heckard*, 238 F.3d 1222, 1227 (10th Cir. 2002). At 6:00 a.m. on October 23, 1997, agents executed search and arrest warrant at Heckard's house. *Id*. Upon forcibly entering the home, agents found Heckard awake and within a few feet of the .357 pistol. *Id*. Other individuals were asleep in the home. *Id*. Agents seized the gun, scale, and papers indicating that Heckard controlled the premises. *Id*.

12. On January 27, 1999, the jury convicted Heckard of all three counts. (Doc. 90.) On

5

February 22, 1999, Judge Parker denied Heckard's Motion for Judgment of Acquittal. (Doc. 94.) On May 7, 1999, Heckard was sentenced to 168 months of incarceration, plus five years of supervised release. (Doc. 102.)

13. Heckard appealed, arguing that the evidence was insufficient to support his conviction, that the court erred in admitting co-conspirator statements, that the court erred in admitting 404(b) evidence, that the court abused its discretion by not severing the firearm count, that the court committed plain error by not including an interdependence element in the jury instructions, that the court erred in ordering a two-level upward adjustment for obstruction of justice, that the court erred in ordering a two-level upward departure for possessing a firearm during a drug trafficking crime, that the court erred in refusing to reduce his sentence for minimal participation, that his convictions were subject to reversal based on *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and that the district court committed plain error by sentencing him to concurrent five-year terms of supervised release. *Heckard*, 238 F.3d at 1228-1236. On January 8, 2001, the Tenth Circuit affirmed. *Id*. Heckard did not petition for certiorari review.

14. On March 13, 2002, Heckard filed his Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255. (Doc. 1.) In his § 2255 Motion, Heckard raises the following issues:

> I. Heckard's conviction and sentence are unlawful and void, in violation of the Fifth and Sixth Amendments to the United States Constitution, in that they are the result of a constructive, and/or effective amendment of the indictment that deprived Heckard of a fair trial and a unanimous jury verdict upon the offense charged in the indictment by the grand jury.
> II. Heckard's conviction and sentence are illegal, unlawful and void, in violation of the Fifth and Sixth Amendments to the United States Constitution, in that the district court, by constructively amending the indictment, was without jurisdiction to receive the verdict or to pronounce the sentence imposed.

III. Heckard's conviction and sentence are unlawful and void, in that 18 U.S.C. § 922(g)(1) represents a constructive amendment to the Second Amendment in violation of Article V of the Constitution of the United States.

IV. Heckard's conviction and sentence under 18 U.S.C. § 922(g)(1) and § 924 (a)(2) are unlawful and void in violation of the Fifth and Sixth Amendments to the United States Constitution, in that they are the result of his being tried for activities which Congress had no authority to regulate.

V. Heckard's conviction and sentence are unlawful and void, in violation of the Fifth and Sixth Amendments to the United States Constitution, and in violation of Strickland v. Washington, 466 U.S. 668 (1984) and Glover v. United States, 148 L. Ed. 2d 604 (2001), in that they are the result of his having had ineffective assistance of counsel for his defense, sentencing and appeal in that counsel:

    a) failed to subpoena Misty Marsh and Eric Sanders to testify at trial on behalf of Heckard;
    b) failed to subpoena Andrew Pompey to testify at trial on behalf of Heckard;
    c) failed to subpoena Michael Bennett to impeach Anthony Flores;
    d) failed to subpoena Joe Franklin, Robert Franklin, and James Landis;
    e) failed to subpoena any witnesses, failed to prepare for trial, and failed to present Heckard's theory of defense;
    f) failed to object to Mark Sanders' testimony about giving Heckard a gun;
    g) failed to object to lack of foundation for Mark Sanders testimony identifying voices on tape;
    h) failed to interview Misty Marsh;
    i) failed to conduct an investigation into the drug trafficking ring;
    j) failed to fully investigate the Government's case and failed to determine that Misty Marsh's testimony would contradict Officer Darcy Walker's testimony;
    k) failed to fully investigate the Government's case and failed to discover that Joe Franklin, Robert Franklin and James Landis would testify that Heckard did not deal in narcotics and that they had not seen him in possession of a firearm;
    l) failed to file a motion for the Court to direct the Government to trace the origin and background of the firearm and determine whether it had been planted by police;
    m) failed to object to the testimony of Danny Carter, DEA that "in his experience" the scales found that Heckard's residence were the type used in drug trafficking;

n) failed to object to the Court's jury instruction relieving the Government from proving the quantity of the drugs, thereby allowing the district court to constructively amend the indictment;
o) failed to properly preserve the constructive amendment of the indictment issue for appellate purposes;
p) failed to research the law pertinent to the issue of "what constitutes an element of the offense, where a specific fact is charged, as here in the indictment" and of "what constitutes a constructive amendment to the indictment" where the district court treats the fact alleged in the indictment as something less than an element of the offense;
q) lacked knowledge of federal drug cases and the United States Sentencing Guidelines and made no effort to protect Heckard's best interests and failed to object to the use of the incorrect base level offense, the enhancement of use of a firearm, and enhancement for relevant conduct of a alleged co-conspirator under *United States v. Studley*, 47 F. 3d 569, 574 (2d Cir. 1995);
r) failed to move to suppress the drugs sold in the park because that Government admitted that the sale was not part of the Pompey, Sanders, and Flores conspiracy;
s) failed to mention in closing argument that the Government failed to produce any evidence that Heckard was processing and preparing drugs;
t) failed to argue that 18 U.S.C. § 922(g)(1) represents a constructive amendment to the Second Amendment and is therefore unlawful and void;
u) failed to raise or preserve the argument set out in paragraph t;
v) failed to argue that, since the adoption of 18 U.S.C. § 921(a)(20), the intent for which federal intervention into firearm possession by felons rested, no longer exists, and therefore, the act,18 U.S.C. §922 (g)(1), is unconstitutional;
w) failed to raise or preserve the argument set out in paragraph v;
x) failed to make an issue of the fact that officers testifying for the Government stated that the gun purportedly found at the residence where Heckard was arrested, was found in three different locations;
y) failed to preserve any of the above related issues for review on direct appeal and counsel on direct appeal failed to raise any of these issues, thereby subjecting these issues to a higher standard of review;
z) counsel's overall performance was so slipshod that it resulted

in Heckard being denied a fair and impartial trial, in the deprivation of the right to compulsory process, in a sentence of imprisonment that was undeserved and unwarranted.

15. The § 2255 Motion, filed within one year plus ninety days of the Judgment and Sentence, is timely under the Antiterrorism and Effective Death Penalty Act. *See* 28 U.S.C. § 2255; Sup. Ct. R. 13; *United States v. Burch*, 202 F. 3d 1274, 1278-1279 (10th Cir. 2000) (where movant does not seek certiorari review, conviction becomes final and the one-year period begins to run upon expiration of time to petition for certiorari review).

16. With the exception of Claim I, Heckard did not raise the claims brought herein on direct appeal. "'A defendant who fails to present an issue on direct appeal is barred from raising the issue in a § 2255 motion, unless he can show cause for his procedural default and actual prejudice resulting from the alleged errors, or can show that a fundamental miscarriage of justice will occur if his claim is not addressed.'" *United States v. Talk*, 158 F. 3d 1064, 1067 (10th Cir.1998) (*quoting United States v. Allen*, 16 F. 3d 377, 378 (10th Cir.1994); *and citing United States v. Frady*, 456 U.S. 152, 167-68 (1982)). Ineffective assistance of counsel claims are an exception to this general rule and such claims may be properly raised for the first time in a §2255 proceeding. *See United States v. Galloway*, 56 F. 3d 1239, 1240-41 (10th Cir.1995). In order to avoid the procedural bar with respect to Claims I-IV, Heckard must show cause and prejudice, or that a fundamental miscarriage of justice would result from application of the procedural bar. *See United States v. Wright*, 43 F. 3d 491, 496 (10th Cir.1994).

17. Ineffective assistance of counsel may constitute cause for the procedural default. *See United States v. Cook*, 45 F. 3d 388, 392 (10th Cir.1995). Heckard asserts that his appellate counsel was ineffective in failing to raise Claims I-IV on direct appeal. A movant may demonstrate cause for

9

a procedural default by showing that his appellate attorney was ineffective in failing to raise "an issue which was obvious from the trial record, ... and one which would have resulted in reversal on appeal." *Cook*, 45 F.3d at 395. Review of counsel's decision to omit an issue on appeal is "highly deferential." *Moore v. Gibson*, 195 F. 3d 1152, 1180 (10th Cir. 1999). The following review of Claims I-IV reveals that they would not have resulted in reversal of Heckard's conviction on appeal, and thus trial and appellate counsel were not ineffective in deciding not to raise the issues at trial and on appeal. Heckard's unsupported assertion of actual innocence is insufficient to satisfy the fundamental miscarriage of justice standard. *See Herrera v. Collins*, 506 U.S. 390, 404 (1993).

**I.     Heckard's conviction and sentence are unlawful and void, in violation of the Fifth and Sixth Amendments to the United States Constitution, in that they are the result of a constructive, and/or effective amendment of the indictment that deprived Heckard of a fair trial and a unanimous jury verdict upon the offense charged in the indictment by the grand jury.**

18.     Count Two of the Indictment charged Heckard with possession with intent to distribute more than 500 grams of cocaine in violation of 21 U.S.C. § 841(a)(1), 21 U.S.C. § 841(b)(1)(B), and 18 U.S.C. § 2. (Doc. 1.) Section 841 (a)(1) provides that is shall be unlawful for any person to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute of dispense a controlled substance. *See* 21 U.S.C. § 841(a)(1). Section 841(b) sets out tiered penalties according to the quantities and the schedule for each controlled substance. *See* 21 U.S.C. § 841(b). Section 841(b)(1)(B) provides, *inter alia*, that a violation of §841(a) involving more than 500 grams or more of a mixture or substance containing a detectable amount of cocaine shall be sentenced to a term of imprisonment of no less than five years and not more than forty years. *See* 21 U.S.C. § 841(b)(1)(B). Section 841 (b)(1)(C) provides that in a case of a Schedule I or II controlled substance, such person shall be sentenced to a term of imprisonment of not more than twenty years,

10

regardless of the quantity. *See* 21 U.S.C. § 841(b)(1)(C). Cocaine is a Schedule II controlled substance. *See* 21 U.S.C. § 821 (c). The Tenth Circuit observed that §841(b)(1)(C), unlike §§841(b)(1)(A) and (B), does not require a showing of a minimum quantity. *Heckard*, 238 F. 3d at 1234-1235. Section 841(b)(1)(C) provides for a maximum penalty of twenty years, while §§841(b)(1)(A) and (B) provide for higher penalty ranges for specific drug quantities. *Heckard*, 238 F. 3d at 1235.

19. Heckard does not assert that the Indictment was defective; he asserts that the jury instructions impermissibly broadened the Indictment because they did not require the jury to find that he possessed with intent to distribute a specific quantity of cocaine. The jury was instructed that the Government did not need to prove a specific quantity or drugs, but only that a measurable amount of the controlled substance was involved in the acts charged in the Indictment. *Heckard*, 238 F. 3d at 1235 n.3. Heckard argues that this omission constructively amended the indictment and deprived him of a fair trial. Ms. Arellanes did not object to the instruction.

20. Substantive amendment of an indictment, particularly if the amendment broadens or alters the offense charged, is reversible error since it violates the defendant's Fifth Amendment right to stand trial only on the charges made by a grand jury in its indictment. *Stirone v. United States*, 361 U.S. 212, 216-217 (1959). However, the Supreme Court recently held that an omission of a fact from a federal indictment that enhances the statutory maximum sentence, when not objected to at trial, is to be tested for plain error under FED. R. CRIM. P. 52(b). *United States v. Cotton*, ___ U.S. ___, 122 S.Ct. 1781, 1785 (2002). Before an error not raised at trial can be corrected there must be (1) error, (2) that is plain, and (3) that affects substantial rights. *Cotton*, ___ U.S. at ___,122 S.Ct. at 1785 (*citing Johnson v. United States*, 520 U.S. 461, 466-467 (1997)).

11

21. On direct appeal, counsel raised a similar issue, arguing that Heckard's conviction should be overturned under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), because the jury did not make a specific finding as to the amount of cocaine that he possessed. *Heckard*, 238 F. 3d at 1234. Based on the statutory language, the Tenth Circuit held that unless a specific quantity is charged in the indictment and found by the jury, a defendant charged with violating §841(a) may only be sentenced to a maximum of twenty years. *Heckard*, 238 F. 3d at 1235; *United States v. Jones*, 235 F. 3d 1231, 1238 (10th Cir. 2000). However, Heckard was sentenced to only fourteen years, well below the statutory maximum. *Heckard*, 238 F. 3d at 1235. Although the jury instruction was erroneous under *Apprendi*, the Tenth Circuit held that Heckard's substantial rights were not affected because he was sentenced within the statutory maximum of 21 U.S.C. § 841(b)(1)(C).

22. A similar reasoning applies to the issue raised by Heckard in his §2255 motion. Because Heckard was sentenced within the statutory maximum of §841(b)(1)(C), his substantial rights were not affected by the omission a specific of drug quantity from jury instructions. The evidence was sufficient to demonstrate that Heckard possessed with intent to distribute cocaine. *Heckard*, 238 F. 3d at 1229. Heckard could have been sentenced to up to twenty years so long as the Government proved the he possessed with intent to distribute some measurable quantity of cocaine. *See* 21 U.S.C. § 841(b)(1)(C). As in *Cotton*, the evidence that Heckard possessed with intent to distribute cocaine was "overwhelming" and "essentially uncontroverted." *Cotton*, ___ U.S. at ___, 112 S. Ct. at 1786. Exclusion of drug quantity from the indictment did not seriously affect the fairness, integrity, or public reputation of judicial proceedings. *Id*. Therefore, Heckard's conviction is not the result of an effective amendment of the indictment that deprived Heckard of a fair trial and a unanimous jury verdict upon the offense charged in the indictment by the grand jury.

23. In the context of the *Apprendi*, the Tenth Circuit already affirmed the use of the jury instruction in Heckard's conviction under the plain error standard. To the extent that Heckard is attempting to re-litigate an issue that was decided on direct appeal, his argument is foreclosed by *United States v. Prichard*, 875 F.2d 789, 791 (10th Cir.1989) (movant may not raise issues on § 2255 that were determined in a direct appeal, absent an intervening change in the law). Appellate counsel effectively argued the issue in terms of *Apprendi* and the result was consistent with *Cotton*. If counsel had argued that the jury instruction impermissibly broadened the indictment, the result on appeal would have been the same. Accordingly, appellate counsel was not ineffective. *Cook*, 45 F. 3d at 395. Because appellate counsel was not ineffective, Heckard has not demonstrated cause for failure to raise Claim I on direct appeal. The circumstances do not indicate that a fundamental miscarriage of justice would result from application of the procedural bar. Accordingly, Claim I is procedurally barred.

**II. Heckard's conviction and sentence are illegal, unlawful and void, in violation of the Fifth and Sixth Amendments to the United States Constitution, in that the district court, by constructively amending the indictment, was without jurisdiction to receive the verdict or to pronounce the sentence imposed.**

24. In *Cotton*, the Court held that omission from a federal indictment that enhances the statutory maximum sentence does not deprive the court of jurisdiction. *Cotton*, ___ U.S. ___, 122 S. Ct. at 1785. In so doing, the Court overruled *Ex parte Bain*, 121 U.S. 1 (1887) and its progeny, which Heckard relies upon in support of his lack of jurisdiction argument. *See Cotton*, ___ U.S. ___, 122 S.Ct. at 1785. Because the authorities relied upon by Heckard are no longer valid, Heckard's jurisdictional argument is without merit. The district court had jurisdiction to receive the verdict and pronounce sentence in Heckard's case. If appellate counsel had argued Claim II on direct appeal, the

13

outcome would not have been altered. Accordingly, appellate counsel was not ineffective. *See Cook*, 45 F. 3d at 395. There is no indication of a fundamental miscarriage of justice. Thus, Claim II is procedurally barred.

**III.    Heckard's conviction and sentence are unlawful and void, in that 18 U.S.C. § 922(g)(1) represents a constructive amendment to the Second Amendment in violation of Article V of the Constitution of the United States.**

25.    The Second Amendment states: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. The Supreme Court has long held that "the Second Amendment guarantees no right to keep and bear a firearm that does not have 'some reasonable relationship to the preservation or efficiency of a well regulated militia.' " *Lewis v. United States*, 445 U.S. 55, 65 n. 8 (1980) (*quoting United States v. Miller*, 307 U.S. 174 (1939)). The Tenth Circuit has upheld the constitutionality of federal weapons regulations such as section 922(g), absent evidence that they in any way affect the maintenance of a well regulated militia. *United States v. Haney*, 264 F. 3d 1161 (10th Cir.2001); *United States v. Baer*, 235 F. 3d 561, 564 (10th Cir. 2000). Heckard does not attempt to argue that his situation falls into the well regulated militia exception and no facts of record can be read to support such an argument. Because the law is well settled that 922(g)(1) does not violate the Second Amendment, Claim III holds no merit. If appellate counsel had argued Claim II on direct appeal, the result would not have been different. Because appellate counsel was not ineffective, Heckard has failed to show cause or prejudice. *See Cook*, 45 F. 3d at 395. No factors tend to support any indication that a fundamental miscarriage of justice would result from application of the bar. Accordingly, Claim III is procedurally barred.

**IV.    Heckard's conviction and sentence under 18 U.S.C. § 922(g)(1) and § 924 (a)(2) are unlawful and void in violation of the Fifth and Sixth Amendments to the United States Constitution, in that they are the result of his being tried for activities which Congress had no authority to regulate.**

26.    In *Lewis*, the Court held that "legislative restrictions on the use of firearms are neither based upon constitutionally suspect criteria, nor do they trench upon any constitutionally protected liberties." *Id*. 455 U.S. at n. 8.  Heckard cites no authority in support of Claim IV and has not presented this court with any argument that could justify this court departing from the binding precedent of *Lewis*.  Claim IV is without merit and counsel was not ineffective in by omitting it on direct appeal.  Heckard has not demonstrated cause and there is no indication of a fundamental miscarriage of justice.  Consequently, Claim IV is procedurally barred.

**V.    Heckard's conviction and sentence are unlawful and void, in violation of the Fifth and Sixth Amendments to the United States Constitution, and in violation of Strickland v. Washington, 466 U.S. 668 (1984) and Glover v. United States, 148 L. Ed. 2d 604 (2001), in that they are the result of his having had ineffective assistance of counsel for his defense, sentencing and appeal.**

27.    In order to obtain habeas relief for ineffective assistance of counsel, "a petitioner must establish both that his attorney's representation was deficient and that he was prejudiced by that deficiency." *James v. Gibson*, 211 F. 3d 543, 555 (10th Cir.2000) (*citing Strickland v. Washington*, 466 U.S. 668, 687 (1984)).  To show his counsel was constitutionally deficient, a movant must demonstrate that his "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688.  In order to demonstrate prejudice, a defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.  A reasonable probability is a "probability

sufficient to undermine confidence in the outcome." *Id.*

28. Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Strickland*, 466 U.S. at 690. The inquiry is " 'highly deferential' to counsel, presuming reasonable judgment and declining to second guess strategic choices." *United States v. Williams*, 106 F. 3d 1362, 1367 (7th Cir.1997). A fair assessment of attorney performance requires a reviewing court "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. "An ineffective assistance claim may be resolved on either performance or prejudice grounds alone." *Fox v. Ward*, 200 F. 3d 1286, 1295 (10th Cir. 2000); *see also Hatch v. Oklahoma*, 58 F. 3d 1447, 1457 (10th Cir.1995).

29. In Claims V (n), (o), (p), (t), (u), (v), and (w), Heckard asserts that Ms. Arellanes and Mr. Hotchkiss were ineffective in failing to preserve and raise issues relating to the arguments advanced in Claims I, II, III and IV. As more fully discussed in connection with the procedural bar analysis, Claims I, II, III, and IV are wholly without merit. Declining to raise a specious argument does not constitute ineffective assistance of counsel. *See United States v. Cook*, 45 F. 3d at 392-393. Because the ultimate issues are devoid of merit, Heckard could not have suffered prejudice from his attorneys' decisions not to preserve or raise arguments relating to these untenable issues. Because he was not prejudiced, Heckard has failed to establish ineffective assistance of counsel as to these sub-issues. Accordingly, Claims V (n), (o), (p), (t), (u), (v), and (w) should be dismissed.

30. Heckard insists that Ms. Arellanes failed to investigate or subpoena witnesses that would have testified in his favor. Heckard has submitted an affidavit stating that he informed Ms.

Arellanes that Marsh would testify that he had nothing to do with the drug sale and that he informed Ms. Arellanes that Joe Franklin, Robert Franklin, and Landis were at his residence on the day of his arrest and would testify that they had never witnessed him dealing drugs or possessing a firearm. Heckard has alleged factors indicating that additional investigation, preparation, and witnesses might have altered the outcome of his case. This court is required to conduct an evidentiary hearing "[u]nless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255; *see also United States v. Lopez*, 100 F. 3d 113, 119 (10th Cir.1996) Although the existing record indicates that Ms. Arellanes' representation was well within the ambit of reasonable representation, an evidentiary hearing is required to address Heckard's allegations concerning ineffective assistance of counsel during pretrial preparation, trial, and sentencing. Counsel shall be appointed and a hearing set by separate order issued contemporaneously herewith.

## RECOMMENDED DISPOSITION

I recommend that Heckard's Motion Under 28 U.S.C. §2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody be **DENIED AS TO CLAIMS I, II, III, IV AND V (n), (o), (p), (t), (u), (v), and (w)**. Heckard's remaining ineffective assistance of counsel claims should remain pending at this time.

Timely objections to the foregoing may be made pursuant to 28 U.S.C. §636(b)(1)(C). Within ten days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant to 28 U.S.C. §636(b)(1)(C), file written objections to such proposed findings and recommendations with the Clerk of the United States District Court, 333 Lomas Blvd. NW, Albuquerque, NM 87102. A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommendations. If no

objections are filed, no appellate review will be allowed.

_____
**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**