IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff-Respondent,

vs.   No.   CIV 02-0285 MV/LCS
                                             CR 98-513 MV

TERRANCE DEWAYNE HECKARD,

    Defendant-Movant.

## MAGISTRATE JUDGE'S SECOND PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION

**THIS MATTER** came before the Court on Movant's (Heckard's) Motion to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255. Heckard, currently incarcerated and proceeding, attacks the Judgment and Sentence entered on May 7, 1999, in the case styled *United States of America v. Terrance Dewayne Heckard*, and numbered CR 98-0285 MV, United States District Court for the District of New Mexico. The United States Magistrate Judge, having considered the objections and arguments of the parties, record, relevant law, and being otherwise fully informed, finds that the Motion is not well-taken and recommends that it be **DENIED**.

### PROPOSED FINDINGS

1.      On August 21, 2002, I issued Proposed Findings and Recommended Disposition that Heckard's Motion should be denied as to Claims I, II, III, IV and V(n), (o), (p), (t), (u), (v), and (w) and that an evidentiary hearing should be held on Heckard's remaining ineffective assistance of counsel claims. (Doc. 11.) Both Heckard and the Government filed timely Objections pursuant to 28 U.S.C. §636(b)(1)(C). (Docs. 16 and 19.) Upon review of the Objections, the record and relevant law, I find that evidentiary hearing is not necessary because "the motion and files and records

of the case conclusively show that the prisoner is entitled to no relief" with respect to all claims, *see* 28 U.S.C. § 2255, and recommend that the Motion be denied.

    2.    On July 22, 1998, Heckard was charged by criminal indictment with conspiracy to possess with intent to distribute 500 grams or more of cocaine in violation of 21 U.S.C. § 846, possession with intent to distribute 500 grams or more of cocaine in violation of 21 U.S.C. § 841(a)(2) and (b)(1)(B) and 18 U.S.C. § 2, and being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1), 924 (a)(2) and 2.  (Doc. 1.)

    3.    On July 28, 1998, Jane Greek, Assistant Federal Public Defender, represented Heckard at his first appearance. (Doc. 2.)  The next day, Robert McDowell, Assistant Federal Public Defender was appointed to represent Heckard.  (Doc. 3.)  On July 30, 1998, John B. Leyba, an attorney on the Criminal Justice Act (CJA) Panel, replaced Mr. McDowell.  (Doc. 7.)  On August 6, 1998, Mr. Leyba moved to withdraw and his motion was granted the same day.  (Doc. 8.)  On August 12, 1998, Angela Arellanes, a CJA panel attorney, was appointed to represent Heckard.  (Doc. 11.)  Ms. Arellanes represented Heckard through sentencing, and filed a notice of appeal on his behalf.  (Doc. 105.)  Todd Hotchkiss, another CJA attorney, represented Heckard on his direct appeal. (Doc. 125.)

    4.    On November 9 and 16, 1998, the Government filed a Motion Admit Co-conspirator Statements and a Motion for Discovery.  (Docs. 21 and 23.)  Ms. Arellanes filed written responses to these Motions.  (Docs. 40 and 41.)  On November 18, 1998, Ms. Arellanes filed five discovery motions on Heckard's behalf,  (Docs 26-30), and on November 25, 1998, she filed a Motion for Grand Jury Transcripts and a Motion to Sever Count III.  (Docs. 37 and 39.)  On December 1, 1998, the Honorable James A. Parker, Chief United States District Judge, granted Defendant's Motion to Disclose Grand Jury Transcripts.  (Doc. 47.)  On  December 3, 1998, Chief Judge Parker denied, or

declared moot, the Motion to Sever and the discovery motions. (Doc. 49.) On December 18, 1998, after hearing, Judge Parker granted the Government's Motion to Admit Co-conspirator Statements. (Doc. 53.)

5.      On January 12, 1999, Heckard filed a Motion to Substitute Attorney. (Doc. 75.) After a hearing where Heckard was permitted to voice his concerns, Heckard agreed to have Ms. Arellanes continue to represent him at trial, with the understanding that she would file a Motion to Dismiss the Indictment based on prosecutorial misconduct. (Doc. 59.) On January 15, 1999, Ms. Arellanes filed a Motion to Dismiss the Indictment and a Motion to Suppress Testimony of Mark Sanders and Anthony Flores as Violative of 18 U.S.C. § 201(c)(2). (Docs. 60 and 66.) On January 19, 1999, Ms. Arellanes filed a Motion in Limine to Exclude Prior Bad Acts. (Doc. 70) On January 21, 1999, Chief Judge Parker denied all three Motions. (Docs. 74, 75 and 79.)

6.      Mark Sanders and Anthony Flores agreed to testify against Heckard. *United States v. Heckard*, 238 F.3d 1222, 1227 (10th Cir. 2002). Before trial Heckard approached Flores in jail with a prepared affidavit for Flores to sign. *Id*. The affidavit stated that Flores had no knowledge of Heckard's involvement in any illegal activity. *Id*. Flores signed the affidavit because he was afraid for himself and his family. *Id*.

7.      The case came on for jury trial on January 25, 1999. (Doc. 82.) New Mexico State Police Officer Darcy White testified that she was working undercover on August 6, 1997 in Hobbs, New Mexico with a confidential informant, identified by Heckard as Misty Marsh. (Trial Tr. at 20-27.) Marsh introduced Heckard to Officer White as "Remus." (Trial Tr. at 20-27.) The initial introduction occurred in front of a house on Dunn Street. (Trial Tr. at 27-30.) Eric Sanders was also present. (*Id*.) Officer White asked Heckard if he had any crack cocaine, Heckard replied he only had

powder cocaine, and the group explored the possibility of a purchase. (Trial Tr. at 29.) As they were discussing the sale, a police car passed by and the four agreed to reconvene the meeting in about fifteen minutes at nearby Washington Park. (Trial Tr. at 30.)

    8.    Officer White and Marsh drove to the park and waited in their vehicle until Heckard arrived driving a pick-up with Eric Sanders in the passenger seat. (Trial Tr. at 31.) Officer White walked over to the driver's side of the truck, and Marsh walked over to the passenger side. (Trial Tr. at 32.) A discussion ensued over the quantity of cocaine to be purchased. (Trial Tr. at 33.) Eric Sanders was holding a baggie of cocaine which he passed over to Heckard. (*Id.*) Heckard told Officer White he would sell her the cocaine, but first he wanted to see her use it. (Trial Tr. at 33.) Officer White refused, and Heckard asked for a container to dispense the cocaine. (Trial Tr. at 34.)

    9.    Officer White and Marsh went back to their vehicle and found a plastic wrapper from a cigarette pack. (*Id.*) Upon returning to the truck, Officer White handed the empty wrapper to Heckard, and gave $50 to Marsh. (*Id.*) Eric Sanders got out of the truck, Marsh got in and scooted over next to Heckard. (Trial Tr. at 35.) After a few minutes, Marsh got out of the truck with something in her mouth and she and Officer White returned to the undercover vehicle. (*Id.*) Once in the car, Marsh removed the cigarette wrapper from her mouth. (Trial Tr. at 36.) The wrapper contained a quantity of cocaine. (*Id.*)

    10.    Flores testified that on September 29, 1997, Flores transported a kilogram of cocaine from Odessa, Texas to Hobbs, New Mexico for Mark Sanders (Eric Sanders' brother) and another co-conspirator named Andrew Pompey. (Trial Tr. at 197; 203-204). Upon arriving in Hobbs, Flores was unable to reach Pompey or Mark Sanders. (Trial Tr. at 205-207.) Nervous about holding such a large quantity of cocaine, Flores stopped at Heckard's house on Dunn Street and asked Heckard

to help him find Mark Sanders. (Trial Tr. at 207.) Heckard and another man were at the house. (Trial Tr. at 208.) Heckard did not know where Sanders was, but agreed to store the cocaine at his house until Sanders could be located. (Trial Tr. at 210-121.) Flores gave Heckard the bag of cocaine and Heckard disappeared with to the back of his house, returning empty-handed. (Trial Tr. at 212-213.) Flores, Heckard, and the other man then left to look for Sanders and Pompey. (Trial Tr. at 213.)

11. About fifteen minutes later, Flores was able to reach Pompey by phone and informed him that the cocaine was at Heckard's house. (Trial Tr. at 213-214.) Pompey became enraged and ordered Flores to go back and pick up the cocaine. (Trial Tr. at 214-215.) As Flores arrived back at Heckard's house, Pompey was also driving up. (*Id.*) Mark Sanders was there and had already retrieved the cocaine. (*Id.*)

12. Mark Sanders testified that in September of 1997, Heckard came to Sanders' house and told him that Flores had just dropped off a kilo of cocaine at Heckard's house. (Trial Tr. at 157.) Sanders accompanied Heckard back to his house to pick up the cocaine, and that Sanders later sold the cocaine. (*Id.*) Sanders further testified that he sold cocaine to Heckard on four or five occasions during the period of the charged conspiracy. (Trial Tr. at 159-161; 167.) Sanders testified that he gave Heckard a .357 pistol and an electronic scale to weigh the cocaine. (Trial Tr. at166-167.)

13. The Government also introduced taped recordings of conversations corroborating Flores' testimony about dropping off the kilogram of cocaine at Heckard's house. (Trial Tr. at 281-282.) Both Mark Sanders and Flores identified the voices on the tapes and verified their accuracy. *United States v. Heckard*, 238 F.3d 1222, 1227 (10th Cir. 2002). At 6:00 a.m. on October 23, 1997, agents executed search and arrest warrant at Heckard's house. *Id.* Upon forcibly entering the home,

agents found Heckard awake and within a few feet of the .357 pistol. *Id.* Other individuals were asleep in the home. *Id.* Agents seized the gun, scale, and papers indicating that Heckard controlled the premises. *Id.* Heckard's threat against Flores and the Flores affidavit were not introduced into evidence, but Ms. Arellanes cross examined Flores on his initial reluctance to testify. *Heckard*, 238 F.3d at 1227.

14. On January 27, 1999, the jury convicted Heckard of all three counts. (Doc. 90.) On February 22, 1999, Judge Parker denied Heckard's Motion for Judgment of Acquittal. (Doc. 94.) On May 7, 1999, Heckard was sentenced to 168 months of incarceration, plus five years of supervised release. (Doc. 102.)

15. Heckard appealed, arguing that the evidence was insufficient to support his conviction, that the court erred in admitting co-conspirator statements, that the court erred in admitting 404(b) evidence, the court abused its discretion by not severing the firearm count, the court committed plain error by not including an interdependence element in the jury instructions, the court erred in ordering a two-level upward adjustment for obstruction of justice, the court erred in ordering a two-level upward departure for possessing a firearm during a drug trafficking crime, the court erred in refusing to reduce his sentence for minimal participation, his convictions were subject to reversal based on *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and the court committed plain error by sentencing him to concurrent five-year terms of supervised release. *Heckard*, 238 F.3d at 1228-1236. On January 8, 2001, the Tenth Circuit affirmed. *Id.* Heckard did not petition for certiorari review.

16. On March 13, 2002, Heckard filed his Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255. (Doc. 1.) The Motion, filed within one year plus ninety days of the Tenth Circuit's decision, is timely. *See United States v. Burch*, 202 F.3d 1274, 1278 (10th Cir.

2000) (holding that the one-year limitation period begins to run when, after direct appeal, the time for filing a certiorari petition expires).[1]

17.     On August 21, 2002, I issued Proposed Findings and Recommended Disposition and recommended that Heckard's Motion should be denied as to Claims I, II, III, IV and V(n), (o), (p), (t), (u), (v), and (w).  (Doc. 11.)  The following claims remain to be addressed:

> V.      Heckard's conviction and sentence are unlawful and void, in violation of the Fifth and Sixth Amendments to the United States Constitution, and in violation of Strickland v. Washington, 466 U.S. 668 (1984) and Glover v. United States, 148 L. Ed. 2d 604 (2001), in that they are the result of his having had ineffective assistance of counsel for his defense, sentencing and appeal in that counsel:
>
>> a)      failed to subpoena Misty Marsh and Eric Sanders to testify at trial on behalf of Heckard;
>> b)      failed to subpoena Andrew Pompey to testify at trial on behalf of Heckard;
>> c)      failed to subpoena Michael Bennett to impeach Anthony Flores;
>> d)      failed to subpoena Joe Franklin, Robert Franklin, and James Landis;
>> e)      failed to subpoena any witnesses, failed to prepare for trial, and failed to present Heckard's theory of defense;
>> f)      failed to object to Mark Sanders' testimony about giving Heckard a gun;
>> g)      failed to object to lack of foundation for Mark Sanders testimony identifying voices on tape;
>> h)      failed to interview Misty Marsh;
>> i)      failed to conduct an investigation into the drug trafficking ring;
>> j)      failed to fully investigate the Government's case and failed to determine that Misty Marsh's testimony would contradict Officer Darcy Walker's testimony;
>> k)      failed to fully investigate the Government's case and failed to discover that Joe Franklin, Robert Franklin and James Landis would testify that Heckard did not deal in narcotics and that

---

[1] The Supreme Court has granted certiorari on this issue. *Clay v. United States*, 122 S.Ct. 2658, 153 L.Ed.2d 834, 70 USLW 3656, 70 USLW 3791, 70 USLW 3798, 2002 Daily Journal D.A.R. 7410 (Jun 28, 2002).

          they had not seen him in possession of a firearm;

l)     failed to file a motion for the Court to direct the Government to trace the origin and background of the firearm and determine whether it had been planted by police;

m)     failed to object to the testimony of Danny Carter, DEA that "in his experience" the scales found that Heckard's residence were the type used in drug trafficking;

q)     lacked knowledge of federal drug cases and the United States Sentencing Guidelines and made no effort to protect Heckard's best interests and failed to object to the use of the incorrect base level offense, the enhancement of use of a firearm, and enhancement for relevant conduct of a alleged co-conspirator under *United States v. Studley*, 47 F.3d 569, 574 (2d Cir. 1995);

r)     failed to move to suppress the drugs sold in the park because that Government admitted that the sale was not part of the Pompey, Sanders, and Flores conspiracy;

s)     failed to mention in closing argument that the Government failed to produce any evidence that Heckard was processing and preparing drugs;

x)     failed to make an issue of the fact that officers testifying for the Government stated that the gun purportedly found at the residence where Heckard was arrested, was found in three different locations;

y)     failed to preserve any of the above related issues for review on direct appeal and counsel on direct appeal failed to raise any of these issues, thereby subjecting these issues to a higher standard of review; and

z)     counsel's overall performance was so slipshod that it resulted in Heckard being denied a fair and impartial trial, in the deprivation of the right to compulsory process, in a sentence of imprisonment that was undeserved and unwarranted.

    18.     In order to obtain habeas relief for ineffective assistance of counsel, "a petitioner must establish both that his attorney's representation was deficient and that he was prejudiced by that deficiency." *James v. Gibson*, 211 F.3d 543, 555 (10th Cir. 2000) (*citing Strickland v. Washington*, 466 U.S. 668, 687 (1984)). To show his counsel was constitutionally deficient, a movant must demonstrate that his "counsel's representation fell below an objective standard of reasonableness."

*Strickland*, 466 U.S. at 688.  In order to demonstrate prejudice, a defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.  A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.*

      19.     Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Strickland*, 466 U.S. at 690. The inquiry is " 'highly deferential' to counsel, presuming reasonable judgment and declining to second guess strategic choices." *United States v. Williams*, 106 F.3d 1362, 1367 (7th Cir. 1997).  A fair assessment of attorney performance requires a reviewing court "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.  "An ineffective assistance claim may be resolved on either performance or prejudice grounds alone." *Fox v. Ward*, 200 F.3d 1286, 1295 (10th Cir. 2000); *Hatch v. Oklahoma*, 58 F.3d 1447, 1457 (10th Cir. 1995).

      20.     In Claims V(a) and (b), Heckard asserts that Ms. Arellanes was ineffective in failing to subpoena Misty Marsh, Eric Sanders and Andrew Pompey to testify at trial.  To prove prejudice, Heckard must show not only that "the testimony of uncalled witnesses would have been favorable, but also that those witnesses would have testified at trial." *Lawrence v. Armontrout*, 900 F.2d 127, 130 (8th Cir. 1990).  Officer White testified that Marsh was involved in the drug sale at the park. (Trial Tr. at 30-38.)  Sanders and Pompey were two of Heckard's co-defendants.  All three would have been entitled to invoke their Fifth Amendment privilege if Ms. Arellanes had called them to testify because such testimony could have subjected them to further criminal liability. *See United States v. Garcia*, 78 F.3d 1457, 1463 (10th Cir. 1996) (concluding that the Fifth Amendment

9

continues to protect defendant during sentencing because such testimony could subject him to further criminal liability). Heckard would not have been able to compel the testimony of these witness. Heckard has failed to establish prejudice within the meaning of *Strickland* because has failed to show that Marsh, Sanders and Pompey would have testified at trial.

21.     In Claim V(c), Heckard alleges that Ms. Arellanes was ineffective by failing to subpoena Michael Bennett, a defense investigator, to impeach Anthony Flores. Heckard prepared a false "sworn statement" for Flores to sign exculpating Heckard. *United States v. Heckard*, 238 F.3d at 1232. At Heckard's sentencing hearing, Flores testified that he was afraid of Heckard. (Sent. Tr. at 49-50, 91-92.) As a result of the incident, Heckard's sentence was enhanced for obstruction of justice.

22.     If a witness does not testify, the petitioner must explain why and "'demonstrate, with some precision, the content of the testimony [he] would have given at trial.'" *Lawrence*, 900 F.2d at 130 (*quoting Cross v. DeRobertis*, 811 F.2d 1008, 1016 (7th Cir. 1987)). Heckard has failed to establish prejudice because he has made no showing concerning the content of Mr. Bennett's testimony. The performance of defense counsel "must be considered in light of the strength of the government's case." *United States v. Rivera*, 900 F.2d 1462, 1474 (10th Cir. 1990). Assuming that Bennett would have testified to an alleged recantation, the Government would have placed Heckard's attempt to obstruct justice before the jury. Ms. Arellanes subjected Flores to a scathing cross-examination at trial, revealing that Flores was a crack addict who was unable to follow Sander's instructions by leaving the kilogram with Heckard. (Trial Tr. at 224-25; 232-34.)

23.     Strategic choices, at which counsel arrives after thorough investigation of relevant law and facts, are "virtually unchallengeable." *See Strickland*, 466 U.S. at 690. In light of the obstruction

of justice issue, Ms. Arellanes decision not to call Bennett was a matter of sound trial strategy and she adequately impeached Flores through cross examination. Heckard has not established the deficient performance prong of *Strickland* with respect to the Bennett issue.

24. In Claims V(d) and (k) Heckard asserts that Ms. Arellanes was ineffective by failing to subpoena Joe Franklin, Robert Franklin and James Landis. Heckard has submitted an affidavit stating that he informed Ms. Arellanes that the Franklins and Landis were at his residence on the day of his arrest and would testify that they were familiar with Heckard, that they had been staying at the house, that Heckard did not live there as a matter of course, that they had never witnessed him preparing, processing or dealing drugs, and had never witnessed him possessing a firearm.

25. The Government proved that Heckard was the owner of the residence where the gun and the cocaine were found, that he was awake and near the gun at the house when the gun was discovered, and that he had received the gun no more than a few months prior to his arrest. *Heckard*, 238 F.3d 1228. Flores testified that he expressly informed Heckard that the bag contained cocaine before giving it to Heckard. *Id.* at 1229. Heckard immediately hid the bag of cocaine in the back of his house and then left to find Sanders, further indicating his knowledge of the illicit nature of the bag's contents. *Id.* Heckard told Sanders that he was holding a kilogram of cocaine, and they went together to retrieve it. *Id.* The evidence at trial established that Heckard and Sanders repeatedly collaborated to distribute cocaine on the streets of Hobbs, with Sanders giving Heckard cocaine for resale. *Id.* Sanders' testimony at trial was corroborated by the scale found at Heckard's house, by the transaction in the park, and by Flores' testimony. *Id.*

26. Testimony by the Franklins and Landis that they had no knowledge of Heckard's connection to the house, drug dealing or firearm possession would not have contradicted the material

evidence supporting Heckard's convictions. Heckard must show that "the testimony of uncalled witnesses would have been favorable . . . " *Lawrence*, 900 F.2d at 130. The fact that these three individuals were unaware of Heckard's illegal activities had no bearing on the issue of Heckard's guilt. Because Heckard has failed to demonstrate that the testimony of the Franklins and Landis would have changed the outcome of the proceedings, Heckard has failed to establish that he was prejudiced by Ms. Arellanes' decision not to call them. Because the testimony would have been irrelevant, Ms. Arellanes's performance with respect to these three witnesses was reasonable.

27.     In Claim V(e), Heckard asserts that Ms. Arellanes was ineffective because she failed to subpoena any witnesses, failed to prepare for trial, and failed to present Heckard's theory of the case. I reject these claims on the basis that Heckard put forth only conclusory and meritless allegations of ineffectiveness and that he demonstrated no prejudice. The performance of defense counsel "must be considered in light of the strength of the government's case." *Rivera*, 900 F.2d at 1474. The Government's case against Heckard was strong. The record demonstrates that Ms. Arellanes was prepared for trial and effectively cross examined witnesses. Heckard has failed to show prejudice or that Mr. Arellanes' performance was unreasonable.

28.     In Claims V(f) and (g), Heckard alleges that Ms. Arellanes was ineffective because she did not object to the testimony of Mark Sanders that he gave the firearm to Heckard, and she did not object to lack of foundation for Mark Sanders' testimony identifying voices on tape. Sanders' testimony about the gun was under oath and based on personal knowledge. (Trial Tr. 167-170; 180; 188-189.) Even if Sanders testimony about the gun had been excluded, the Government established that Heckard owned the house where the gun was found and that he was awake and near the gun when it was discovered. *Heckard*, 238 F.3d at 1228. Sanders and Flores identified the voices on the

12

tape and verified the accuracy of the conversations. *Heckard*, 238 F.3d at 1227. DEA Agent Curtis Nelson testified that he was the case agent, had monitored the wire taps and identified the speakers on the tapes. (Trial Tr. at 281.)  Any objection would have been pointless and would not have changed the outcome of the case.  Ms. Arellanes' decision was sound trial strategy. *See Strickland*, 466 U.S. at 690.  Heckard has failed to prove either prong of *Strickland* with respect to Claims V(f) and (g).

29. In Claims V(h) and (j), Heckard asserts that Ms. Arellanes was ineffective because she did not  interview Marsh and failed to conduct an investigation that would have revealed that Marsh's testimony would have conflicted with Officer Walker's testimony.  Heckard claims that Marsh would have provided information to that contradicted the Government's theory, but he does not identify what Marsh would have said during an interview or how her testimony would have conflicted with Officer White's.  A particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgment. *Strickland*, 466 U.S. at 691.  "[W]hen a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable." *Id*.  Marsh would have been entitled to invoke her Fifth Amendment privilege at trial and was under no obligation to talk to Ms. Arellanes.  Heckard has not shown how an interview with Marsh would have changed the outcome of the proceedings.  Heckard has failed to specify what Ms. Arellanes could have learned from interviewing Marsh.  Heckard has failed to establish prejudice or unreasonable performance with respect to Claim V(h) and (j).

30. In Claim V(i), Heckard alleges that Ms. Arellanes failed to conduct an investigation of the drug trafficking ring which would have allegedly revealed that Heckard was not part of the ring

13

and turned up several witnesses who were part of the ring. Heckard does not identify these witnesses or state what evidence would have been discovered. When an ineffective assistance claim centers on a failure to investigate, "[t]he focus of the inquiry must be on what information would have been obtained from such an investigation and whether such information, assuming its admissibility in court, would have produced a different result." *Cross v. DeRobertis*, 811 F.2d 1008, 1016 (7th Cir. 1987). Heckard fails to identify what information such an investigation would have yielded, nor does he state how such an investigation would have altered the outcome of the proceedings. Heckard has not demonstrated prejudice or unreasonable performance with respect to Claim V(i).

      31.     In Claim V(l), Heckard alleges that Ms. Arellanes failed to file a motion requesting the court to direct the Government the name of the registered owner of the firearm to possibly establish that the firearm was planted by police. "A defendant is not entitled to an attorney who will '"leave not the smallest stone unturned."' *Coleman v. Brown*, 802 F.2d 1227, 1234 (10th Cir. 1986) (*quoting United States v. DeCoster*, 624 F.2d 196, 210 (D.C.Cir. 1979)). ATF Agent Ernest Dishman testified that a trace was initiated on the firearm, but because the gun was manufactured before 1985 it was very difficult to ascertain the identity of the original purchaser and the gun had likely entered the secondary market. (Trial Tr. at 128-129.) Sanders testified that he gave the gun to Heckard. *Heckard*, 238 F.3d at 1232. On cross-examination, Ms. Arellanes brought out that the trace on the gun was not successfully completed. (Trial Tr. at 131.) Heckard offers no evidence to support his conjecture that the police planted the gun. Ms. Arellanes performance was reasonable and Heckard has not shown the outcome would have been any different. Heckard has failed to establish prejudice or unreasonable performance with respect to Claim V(l).

      32.     In Claim V(m), Heckard alleges that Ms. Arellanes failed to object to the testimony

14

of DEA Agent Danny Carter that in his experience the scales found in the house were consistent with drug trafficking. Testimony regarding the possession of scales as "tools of the trade--that is, means for the distribution of illegal drugs" is admissible without expert testimony where the jury can understand the significance of possession of such items. *United States v. Becker*, 230 F.3d 1224, 1231 (10th Cir. 2000) (*citing United States v. Martinez*, 938 F.2d 1078, 1083 (10th Cir. 1991)). Agent Carter had thirteen years of law enforcement experience and could have easily qualified as an expert witness on the tools of the drug trade. (Trial Tr. at 64.) The scales were found in close proximity to the meth lab. An objection to Agent Carter's testimony regarding the scale would have been fruitless. As a matter of trial strategy, Ms. Arellanes may have wanted to avoid having Agent Carter testify about finding scales in other drug cases or making a frivolous objection in front of the jury. Heckard has failed to establish prejudice or unreasonable performance with respect to Claim V(m).

33.     In Claim V(q), Heckard alleges that Ms. Arellanes was inexperienced with federal drug cases and the United States Sentencing Guidelines and that he would have received a shorter sentence with a more experienced attorney. Ms. Arellanes has been a member of this District's Criminal Justice Act Panel for many years. A search of this Court's database reveals that Ms. Arellanes has represented well over one hundred defendants in felony criminal cases during past decade. The record demonstrates that Ms. Arellanes zealously defended Heckard and vigorously cross-examined the Government's witnesses. Ms. Arellanes' performance was exemplary under the difficult circumstances of this case.

34.     The arguments concerning the base offense level, firearm enhancement and relevant conduct enhancement are similarly without merit. Heckard was sentenced based upon the quantity

of cocaine that he actually possessed. The Tenth Circuit has already determined that firearm and relevant conduct enhancements were correct. *Heckard*, 238 F.3d at 1233. Heckard has failed to show unreasonable performance or prejudice with respect to Claim V(q).

35.     In Claim V(r), Heckard alleges that Ms. Arellanes was ineffective because she failed to move to suppress evidence that the drugs sold in the park were part of the conspiracy. The park transaction took place on August 6, 1997. (Trial Tr. at 21.) The Indictment charged that the conspiracy started on August 6, 1997. (Doc. 1.) Thus the park transaction took place during the time period of the conspiracy. In any event, the park transaction would have been admissible to show knowledge of cocaine under FED.R.EVID. 404(b). Heckard has not shown prejudice or unreasonable performance with respect to Claim V(r).

36.     In Claim V(s), Heckard alleges that Ms. Arellanes was ineffective because she failed to point out to the jury that the Government failed to present any evidence that Heckard was processing and preparing drugs. Heckard claims that the Government argued in its opening statement that he was preparing a processing drugs. The record shows that the Government made no such statement during opening argument. (Trial Tr. at 11-15.) Ms. Arellanes could not have been ineffective by failing to challenge an assertion that was not made. Heckard has not shown prejudice or unreasonable performance with respect to Claim V(s).

37.     In Claim V(x), Heckard alleges that Ms. Arellanes was ineffective because she failed to point out to the jury that the gun that was allegedly found at the house was allegedly found in three different places and that this argument would have assisted the jury in understanding his theory that the gun had been planted. Government Exhibit 6B, a photo depicting the .357 revolver on the bathroom floor of Defendant's house, was admitted into evidence. (Trial Tr. 168.) Sanders identified

16

the gun as the one he had given to Heckard. (Trial Tr. 167-168.) Special Agent Andrew Armijo testified that the gun was found lying on the floor of the bathroom during the execution of the search warrant. (Trial T. 88-91.) Heckard has not shown prejudice or unreasonable performance with respect to Claim V(x).

38.	In Claim V(y), Heckard alleges that Ms. Arellanes was ineffective because she failed preserve any of his issues for direct appeal, thereby subjecting them to a higher standard of review. As more fully discussed above, Heckard's claims are without merit. Heckard has not shown prejudice or unreasonable performance with respect to Claim V(y).

39.	In Claim V(z), Heckard alleges that Ms. Arellanes's overall performance was "slipshod." Heckard offers no factual basis for this claim. Ms. Arellanes' performance was highly professional. Heckard has not shown prejudice or unreasonable performance with respect to Claim V(z).

40.	In ruling on a motion under § 2255, the district court is required to hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. This requirement, however, "does not 'imply that a movant must always be allowed to appear in a district court for a full hearing if the record does not conclusively and expressly belie his claim, no matter how vague, conclusory, or palpably incredible his allegations may be.'" *Chang v. United States*, 250 F.3d 79, 85 (2d Cir. 2001) (*quoting Machibroda v. United States*, 368 U.S. 487, 495 (1962)). The motion and the files and records of this case conclusively show that Heckard is entitled to no relief. Heckard's § 2255 Motion and request for an evidentiary hearing should be denied.

## RECOMMENDED DISPOSITION

I recommend that Heckard's Motion Under 28 U.S.C. §2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody and request for an evidentiary hearing be **DENIED.**

Timely objections to the foregoing may be made pursuant to 28 U.S.C. §636(b)(1)(C). Within ten days after a party is served with a copy of these second proposed findings and recommendations that party may, pursuant to 28 U.S.C. §636(b)(1)(C), file written objections to such proposed findings and recommendations with the Clerk of the United States District Court, 333 Lomas Blvd. NW, Albuquerque, NM 87102. A party must file any objections within the ten day period allowed if that party wants to have appellate review of the second proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

_____
**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**